Kirkpatrick *v.* Corning.

ANDREW KIRKPATRICK, receiver &c., appellant,

*v.*

ERASTUS CORNING et al., respondents.

1. L. was appointed receiver of the firm of James S. Horner & Co., after the death of Horner. C. filed his bill to foreclose a mortgage given by James Horner & Co. L. was made a party to the foreclosure suit in his individual capacity, and the devisees of Horner were also made parties. L. should have been made a party as receiver, but neither he nor the devisees whom he represents can stand by without objecting, and claim to be heard against the proceedings and decree after sale, on the ground that L. was not a party as receiver.

2. The charge of complicity between the receiver and Corning to deter persons from bidding at the foreclosure sale, furnishes sufficient ground for retaining a bill filed on behalf of the devisees of H. to set aside the sale.

On appeal from a decree of the chancellor, whose opinion is reported in *Kirkpatrick* v. *Corning, 10 Stew. Eq. 54.*

*Mr. Theodore W. Dwight,* of New York, and *Mr. Cortlandt Parker,* for appellant.

I. The receiver of the partnership estate was a necessary party to the foreclosure proceedings, and the omission to make Ludlum a party in that character gave the court no jurisdiction to determine the case against him, and, by consequence, not against the partnership.

(*a*) The receiver had the legal and equitable property at the time of foreclosure.

It is now time to apply these general principles to the special

case of the partnership in this cause.    To do this intelligently, it
is necessary to consider the true theory under which real estate
is held by a partnership where the property is used for partner-
ship purposes, and was acquired by partnership funds.    There
are two distinct theories upon this subject.    One may, for the
sake of distinction, be called the *English* theory; the other, the
*American* doctrine, though some of the American states adopt
the English rule.

*The English Theory.*—The settled doctrine in England on the
subject of such partnership property as is above described, is that
it is in substance *personal* property, in the view of a court of
equity.    *Lake* v. *Craddock, 1 Lead. Cas. in Eq. 231; Townsend*
v. *Devaynes, 1 Mouat on Part. (Append.) 97; Phillips* v. *Phillips,
1 M. & K. 649; Nehrboss* v. *Bliss, 88 N. Y. 600–604; Slip-
per* v. *Stidstone, 5 T. R. 493; Adams* v. *Hackett, 27 N. H. 289;
Richards* v. *Heallin, 1 B. & Ald. 29; Kemp* v. *Andrews, 1
Show. 188.*

It is true that in New Jersey and many other American states
it is declared by statute that every estate in land granted to two
or more persons in their own right is construed to be a tenancy
in common, unless expressly or by *manifest implication* declared
to be a joint tenancy.    *Nix. Dig. (4th ed. 1868) p. 150.*

The case of partnership real estate clearly falls within the im-
plication referred to.    Convenience of commerce and the prompt
settlement of estates requires that the surviving partner should
have the largest and most ample facilities for adjustment.    This
he cannot have unless the title vests in him.    This construction
was put upon a similar statute in the case of *Appleton* v. *Boyd,
7 Mass. 131–134; Kinsley* v. *Abbott, 19 Me. 430–434.*

If, however, the *legal* title does not vest in the surviving part-
ner by reason of this statute, then it is, at most, but a barren
technical title in the heirs of the deceased.    They will be com-
pelled in equity to convey in accordance with any sale or trans-
fer by the survivor made with the view of adjusting the affairs
of the estate.    *Brown* v. *Brown, 3 M. & K. 443; Delmonico* v.
*Guillaume, 2 Sandf. Ch. 405; Buchan* v. *Sumner, 2 Barb. Ch.*

165 ; *Swift* v. *Tarleton, Id. 336 ; Collumb* v. *Reed, 24 N. Y. 505.*

*The American Theory.*—The rule laid down in *Lake* v. *Craddock, supra,* and kindred cases, has not been fully adopted in the American states as a body.

A modification of the English rule was promulgated by Chancellor Walworth, in the leading case of *Buchan* v. *Sumner, 2 Barb. Ch. 165.* The cases are collected in the American notes to *Lake* v. *Craddock, 1 Lead. Cas. in Eq. 164 ;* see, also, *Collumb* v. *Reed, 24 N. Y. 505.*

The only distinction between the *English* and *American* view is as to the disposition of the *surplus* after the debts are paid and the partnership affairs adjusted. Under the one theory, the surplus goes to the *personal representatives* of the deceased partner ; and under the other, to the *heirs.* This is held in *Tillinghast* v. *Champlin, 4 R. I. 207,* and other cases.

(*b*) The appointment of the receiver in the action for an accounting brought by Mrs. Buckingham vested the title in him.

(1). This must be so in order to enable him to manage effectively the trust imposed upon him by the court. Otherwise, there will be a conflict of action between him and the surviving partner. It would be absurd to say that one rule of law gave the survivor full power over the assets to enable him to manage the property in trust, while another rule gave the receiver concurrent power as a trustee to manage and control the same property. *Tillinghast* v. *Champlin, 4 R. I. 173 ; Egberts* v. *Wood, 3 Paige 526 ; Waring* v. *Robinson, 1 Hoff. Ch. 532·;* see, also, *Hutchinson* v. *Lord Massareeve, 2 B. & B. 56 ; Iddings* v. *Bruen, 4 Sandf. Ch. 422–427.*

(2). The effect of the *order* issued by the court appointing James Ludlum as receiver, was to invest him with the legal title. There can be no doubt of *the power* of the court by an order to give the receiver the legal title in a case like the present. *Iddings* v. *Bruen, 4 Sandf. Ch. 418, 425.*

(3). He has power to redeem from mortgages all of the estates belonging to the firm, and to use for that purpose any funds in his hands belonging to the estate.

Kirkpatrick *v.* Corning.

The grant of such a power as this leads to the inference that he has *the title*. It is a well-settled rule of law that no one can exercise a right of redemption of a mortgage unless he has *an estate in the land*. If he were defendant in a foreclosure suit, he very likely might bring in the money on an equitable title. But he cannot maintain a bill *in his own name alone* to redeem, unless he has the legal title.

If there be a contract of sale of land, passing the title equitable to land, the equitable owner cannot redeem in his own name for want of the legal title. *Lomax* v. *Bird, 1 Vern. 182 ; Grant* v. *Duane, 9 Johns. 612 ; Porter* v. *Reed, 19 Me. 363 ; Bowman* v. *Caltet, 13 Sm. & Marsh. 149 ; McDougald* v. *Capron, 7 Gray 278.*

The office of a receiver *pendente lite* is simply to preserve property during the pendency of a litigation. He is a mere custodian. He resembles a stakeholder. He does not, in general, have the title. He does not need it. The duty of mere preservation does not require ownership. *Kenney* v. *Home Ins. Co., 71 N. Y. 396, 401 ; Fincke* v. *Funcke, 25 Hun 616, 618 ; Foster* v. *Townsend, 68 N. Y. 206 ; Green* v. *Winter, 1 Johns. 60.*

(*c*) Assuming that the receiver had the title, whether legal or equitable, he had *the right to redeem* on the foreclosure suit, and should have been made a party to the action of foreclosure.

(1). He had the right *to redeem* by the terms of the order of appointment. The right of redemption is conferred upon him in the order in the *character of receiver*. See the order. It is an indispensable requisite when one has the right to redeem, to make him a party in order to cut off the right of redemption. A decree as to such a person is a nullity if he be omitted. *Colter* v. *Jones, 52 Ill. 84; Goodrich* v. *Staples, 2 Cush. 258 ; Williamson* v. *Field, 2 Sandf. Ch. 533 ; Finley* v. *United States Bank, 11 Wheat. 304.*

(2). If the receiver simply had the *equitable title* to all the real estate of the firm, and it was not necessary for him to have the legal ttile in order to redeem, he would on that hypothesis still have had a right to redeem, and should have been made a party. *Lowry* v. *Tew, 3 Barb. 407.*

(d) It was absolutely indispensable in the foreclosure suit to make James Ludlum a party in his character as receiver. The facts of the partnership, together with his receivership, should have been disclosed in those suits, and relief demanded against him in that character. As this was not done, the foreclosure, as to them at least, was a nullity, and the right to redeem continues.

(1). A receiver is a trustee. More than this, he is an official trustee—a court officer. The property in his possession is in *custodia legis*. The court, is in possession through him. His power and duties are conferred upon him by judicial order obtained in the course of a suit in chancery. The fact that in the present case he was also surviving partner is immaterial. He did not derive his power to redeem, under the order, from his interest as surviving partner, but from the direction of the court.

(2). If he had the right to redeem as surviving partner, all that right was merged in his new right as receiver. Otherwise, two distinct persons might have an equal and co-ordinate right to redeem. If some other person than the survivor had been appointed receiver, such a position would be absurd. It is none the less so, though the survivor be himself receiver.

(3). The proposition for which we contend may be placed on the broader ground of the general principles of estoppel as applied to judgments of courts of justice. It may be formulated in this way: a person who holds towards a pending cause two characters, individual and representative, is not bound in his representative character by proceedings culminating in a judgment, in which no mention is made of his representative character. The judgment is conclusively presumed to have been against him in his individual character. This is particularly true where judgment is taken by default. Ludlum had a residuary interest in this property, which made it proper for him to be represented in the foreclosure in his individual character. *Bigelow on Estoppels* § *3*; *Herman on Estoppels* § *191*; *Vanhorn* v. *Tisdale, 4 Hal. Ch. 376*; *Wade* v. *Miller, 3 Vr. 298*; *Mundy* v. *Vail, 5 Vr. 418*; *Foster* v. *Union Nat. Bank, 7 Stew. Eq. 48, 371*; *West* v. *Creditors, 3 La. Ann. 529*; *Mayo* v. *Tompkin, 6 Munf. 520*; *Winfred* v. *Herberer, 63 Ind. 67*; *Carter* v. *Ingraham, 43*

Kirkpatrick *v.* Corning.

*Ala. 78; Rathbone* v. *Rooney, 58 N. Y. 463; Meters* v. *Brown, 1 H. & C. 686; Legge* v. *Edmunds, 25 L. J. 125.*

II. The sale of the personal property of the firm by James Ludlum, as receiver, through Ricord, master in chancery, viewed with reference to the accompanying acts of Ludlum acting as agent for the defendant Corning, was void.

(*a*) The order of the court of chancery authorizing Ludlum to bid at the sale, notwithstanding his position as trustee, in the same manner as if he were not receiver, was improvident and void, and the court *exceeded its jurisdiction* in making the order. *Ex parte James, 8 Ves. 352, 353; Davoue* v. *Fanning; 2 Johns. 252; Michoud* v. *Girod, 4 How. (U. S.) 504; Lewis* v. *Hillmore, 3 H. L. Cas. 629, 1 Lead. Cas. in Eq. 139, and cases.*

The rule applies to a trustee of *personal* property as well as real estate. *Aberdeen R. Co.* v. *Blakie, 1 Macq. 461.*

The rule in *Ex parte James, supra,* was applied to the case of an assignee of a bankrupt. It, however, extends to all trustees or persons acting in a fiduciary character. It has been specifically decided that it includes *receivers. Alvin* v. *Bond, 1 Fl. & K. 196; White* v. *Tommy, Id. 224.*

In *Cary* v. *Cary, 2 Sch. & Lef. 179,* a purchase by a receiver was set aside by Lord Redesdale, then lord chancellor of Ireland.

There are cases where a court may allow a trustee to bid. This is, however, only where the *cestuis que trust* are not *sui juris, e. g.,* under disabilities as infants. But even where a trustee bids on this ground, scrupulous care is taken by the court to have safeguards against the possibility of abuse. *Campbell* v. *Walker, 5 Ves. 681, 682.*

(*b*) But even if it be held that the court had jurisdiction to allow Ludlum to bid at the sale, it did not go so far in its order as Ludlum went, and permit him to act as *agent* for others. His act being clearly in violation of his duty, the sale made to Corning through him is void.

(1). The bill shows that Ludlum did not avail himself of the privilege given to him by the court. He notified the master in chancery, at or before the sale, that he intended to bid only as

*agent* for others whom he named, the defendant Corning among others, and that it was not his intention to bid for himself, individually, at all. The order of the court only authorized him to bid *and buy.* He *wholly ignored the order,* and proceeded on the general idea that he had a right to act for others. There cannot be a shadow of pretence that he can shield himself under any order of the court. The case must now stand on the naked proposition that he had a right, in equity, to act at the sale as an agent for others.

Such a proposition is as unfounded as it is mischievous and inequitable. It is absolutely settled that a trustee cannot act as agent, in bidding for others. *Ex parte Bennett, 10 Ves. 381; Coles* v. *Trecotheck, 9 Ves. 248; Gregory* v. *Gregory, Coop. 204; North Baltimore Association* v. *Caldwell, 25 Md. 420.*

(2). The wrongful conduct of Ludlum is to be imputed to the defendant Corning, and he is to be charged with all its legal consequences.

The bill shows that he knew that Ludlum was receiver. He was accordingly bound, on general principles of law, to know what his powers were, and their limitations, and to take no greater rights than the law allowed. It is not necessary to impute bad faith to him, in the positive sense of that term. It is enough to say that he is legally chargeable with all the consequences that regularly flow from conduct like that of Ludlum.

As Ludlum was his agent, he knew, constructively, all that Ludlum knew. Notice to Ludlum was notice to him. Knowledge on Ludlum's part was knowledge on the part of Corning. He cannot accordingly play here the *role* of a purchaser for value, in good faith and without notice. *Dresser* v. *Norwood, 17 C. B. (N. S.) 466; The Distilled Spirits, 11 Wall. 356; Warrick* v. *Warrick, 3 Atk. 291; Sooy* v. *State, 12 Vr. 394; Houseman* v. *Girard Assn., 81 Pa. St. 256; Bk. of U. S.* v. *Davis, 2 Hill 452; Brown* v. *Montgomery, 20 N. Y. 287.*

Corning, defendant, *received* and *retains* the full benefit of this sale, with an admission of his demurrer in this cause, that he has full knowledge of all the facts adverse to Ludlum's conduct. Such a state of facts is a *ratification* of Ludlum's acts,

Kirkpatrick *v.* Corning.

and makes him legally responsible for them.  *Mowry* v. *Rosendale, 74 N. Y. 360 ; Seymour* v. *Wyckoff, 10 N. Y. 213.*

Substantial justice is worked out by having this sale set aside. The defendant will have his full debt allowed to him on the accounting.  The value of the property can be ascertained and credited on the debt.  The complainant offers in the bill to pay any balance that may remain due, and the relief will only be granted on this payment.

III.  There is no such ground as "multifariousness" stated in the demurrer.  It is framed in the most general terms, viz., that the bill does not contain any equity.  A form of demurrer on the ground of multifariousness, is given in *3 Dan. Ch. Pr. (3d Am. ed.) 2117,* in which it is set forth that the bill is exhibited as against the defendants thereto for *distinct matters and causes &c.,* and the bill is *altogether multifarious.  Rump* v. *Greenhill, 20 Beav. 512, 524; S. C., 1 Jur. (N. S.) 123.*  This would seem to show that demurrers for multifariousness and for want of equity are not equivalent in law, as they are not certainly in good sense. It is insisted that multifariousness cannot be considered on the present demurrer.

But if this objection is open to the defendants, it is not tenable.  There is no multifariousness.  This is a bill to redeem and for an accounting.  The accounting includes the personal property, and must be considered, in order to determine how much is due to the defendant Corning.  The Pompton company is in privity with Corning.  On the theory of the bill, it is an *alter ego.*  It is Corning under another name.

It is well settled that a bill is not multifarious when one general subject is claimed by the plaintiff, though the defendant may have separate and distinct rights.  *Newland* v. *Rogers, 3 Barb. 432 ; Sears* v. *Carrier, 4 Allen 341 ; Stuart* v. *Coalter, 4 Rand. 74.*

*Mr. Thomas N. McCarter,* for respondents.

I.  Mr. Ludlum, as receiver, was not a necessary party to the

foreclosure suit, nor had he any estate or equity of redemption in the mortgaged premises in his capacity as a receiver, that would not be barred by the decree against him as an individual and against the other parties for whom he was appointed receiver.

It is only when a receiver is to be adjudged or required to do something for the benefit of complainant, that he is a proper party. *High on Receivers* § *258*.

When the parties in interest are sufficiently represented for the court to enable it to determine the controversy, there is no reason for bringing the receiver in in cases where he is not the owner. *High* §§ *259, 260; Arnold* v. *Suffolk Bank, 27 Barb. 424; Wilson* v. *Wilson, 1 Barb. 592, 595*.

It is settled in New Jersey that the appointment of a receiver over property does not, *proprio vigore*, vest any title in the receiver. *Willink* v. *Morris Canal Co., 3 Gr. Ch. 377; Receiver of State Bank* v. *Bank of Plainfield, 7 Stew. Eq. 450, 455, 456*.

If, when the foreclosure was in progress, either Ludlum or the other defendants had seen any necessity for Ludlum's being made a party as receiver, it was their right and duty to apply to have him made a party. *Willink* v. *Canal Co., supra*.

Not one of them raised any such question. They besieged the court with applications to be let in to defend, and after decree to stay the sale, but no one ever suggested any infirmity in the decree for the reason now argued. *Horner* v. *Corning, 1 Stew. Eq. 254; Corning* v. *Ludlum, Id. 399*.

II. It is claimed by the bill that if the decree cannot be opened the sale should be set aside for two reasons:

(1). Misconduct of Ludlum as to the sale of the personal property.

(2). The transactions relating to the Schuyler lease.

(1). As to the order directing the sale of the personal property by Ricord, as master in chancery. The reason for making it was that Ludlum might bid, notwithstanding his position as receiver, *in the same manner as if he was not receiver, and without applying for the sanction of the court.* This order was made on the application of the Buckinghams.

It is admitted that Ludlum's action was open. He made

Kirkpatrick *v.* Corning.

known in writing just what he intended to do. ⸪ No objection was made at the time by any one, and no objection was made to the application of the amount of Corning's purchase in payment *pro tanto* of his decree, nor was any objection made to the subsequent sale of the real estate to satisfy a balance due after crediting such purchase. It is admitted that a new corporation has been formed, to which the personal property thus purchased was sold by Corning, without the slightest hint of any infirmity in his title to it. In November, 1882, more than three years after the appointment of the present receiver, and six years after the sale, the new receiver comes in by his bill, and for the first time " hereby elects," as he says, to avoid the sale of the personal property !

No fraud is charged against Corning, except that by having adopted Ludlum's acts he is guilty of " constructive fraud," by reason of which there should have been a larger credit on the mortgage debt than was allowed, and the proposition is to charge Corning with a credit on this mortgage equal to the fair market value of the personal property thus bought by him.

The legal answer to this proposition is so well stated by Vice-Chancellor Van Fleet, in the case of *Snyder* v. *Blair, 6 Stew. Eq. 208,* that no argument of mine can improve it.

(2). As to the " Schuyler " lease. Briefly stated, the facts are these: The firm of Horner & Co., the owners of the mortgaged premises, had, for many years, leased of the heirs of Schuyler, lands adjoining the mortgaged premises, for the privilege of flowing such leased lands with water in aid of their water-power. The firm was dissolved June 9th, 1874, and the then current lease expired on June 1st, 1876, and one of its provisions was that the lessees (the members of the late firm) might, before the expiration of the lease, purchase the demised lands for $3,000. The complaint is that Ludlum had means to renew the lease or purchase the land, but he permitted it to expire, and afterwards Corning, the mortgagee, obtained a new lease in the name of Mrs. Ludlum. When the sale took place it was made known by Ludlum that his wife had acquired such a lease, and that she would hold it adversely to any purchaser.

The first answer to the above is that Ludlum was a receiver of the court, and all the funds of the estate which he held were subject to the order of the court. The firm was dissolved and its business discontinued. What authority had Ludlum, without an order of the court, to make a new lease, or to expend $3,000 of the firm's money in the purchase of real estate, simply because it would be a valuable addition to that which it before owned? Had he made such a purchase it would all have enured to the benefit of the mortgagee, and Ludlum would have been greatly censured for such an abuse of his powers.

Besides, it was open for the Buckinghams to apply to the court for directions to Ludlum to renew the lease, for the benefit of the estate, or to purchase the fee of the land. The Buckinghams were the actors in the suit, but they never made any such application, but concurred in the non-action by which the lease was allowed to expire. Moreover, it appears by the order directing Ricord to sell, that the Buckinghams had purchased the mortgaged premises for a fixed price, and it was their place to renew the lease. Certainly no part of the firm's money should be used to enhance the value of property which belonged no longer to the firm, but to Mrs. Buckingham. After that, there was no right either of renewal or purchase. Such being the facts, what possible legal harm could the mortgaged premises suffer by not purchasing such real estate?

No application was made to the court to set aside the sale, nor is the transaction questioned in any way for over five years; and even now there is no allegation that any intending purchaser was deterred from bidding by reason of it, or that the property would have brought more than enough to satisfy the mortgage, had the flowed land been acquired by the receiver at an outlay of $3,000, in which case such outlay would have been a total loss.

III. This bill is multifarious; as a bill to redeem, it makes parties, Mrs. Ludlum and the Pompton Steel and Iron company, neither of whom have any concern in the real estate, and no relief is asked against either of them as to the personal estate. *Crane* v. *Fairchild, 1 McCart. 76; Emmans* v. *Emmans, 2 Beas. 205; Emmans* v. *Emmans, 1 McCart. 114.*

IV. This is essentially a bill to recover back usurious interest. Such would be the result if the complainant's claim were allowed.

By the law of New York such actions are only allowed within one year.

In such cases, although the court is not bound by the statute, yet the rule is that equity follows the law.

Lapse of time and laches in bringing forward the claim may be taken advantage of by demurrer. *Story's Equity Pl.* §§ *484, 503, 751.*

No excuse whatever is offered for the delay ; no pretence is set up in the bill that the facts have recently come to the knowledge either of Ludlum or the Buckinghams, or that they were not as well known at Horner's death, in 1874, as they are now. Such inexcusable delay is of itself fatal to the suit.

The opinion of the court was delivered by

VAN SYCKEL, J.

The bill shows that the firm of James Horner & Co., composed of James Horner and James Ludlum, manufacturers of steel and files at Pompton, in this state, was dissolved in 1874, by the death of Horner ; that, at his death, the firm owned real estate at Pompton, worth near $200,000, and personal property exceeding in value that amount ; that the liabilities of the firm, including $115,000, then claimed by Corning to be due to him on his mortgages against the property, aggregated $180,490 ; that Horner, by his will, gave to Ludlum's wife his interest in the land on which the mansion-house was being built, and after providing for the payment of debts, gave the residue to Alice Buckingham, one-fourth of which she was to hold in trust for her sister, Susan Horner, and appointed Alice Buckingham executrix of his will ; that she proved the will, and in 1874 filed a bill in chancery, as executrix, against James Ludlum, for an account and settlement of the partnership estate, and for a receiver ; that, under these proceedings, Ludlum was appointed receiver, with power to take possession of the firm property, to sell the personal property, with leave, notwithstanding his office

of receiver, to bid for himself in person or by agent, at any sale thereof; to pay and compound the debts of the firm and to redeem from mortgage any of the firm estates. The bill further alleges that, in June, 1875, Corning commenced suits for the foreclosure of two mortgages given by James Horner and James Ludlum, making James Ludlum and Susan H., his wife, Alice Buckingham and John M. Buckingham, her husband, Eliza Horner and Susan Horner, the only defendants thereto. The bills did not state the fact that the mortgaged premises were partnership property, nor that Ludlum was receiver of the firm. The foreclosure suits were consolidated, and on the 5th of April, 1876, there was a decree for foreclosure and sale for the sum of $96,209.23.

None of the defendants, save Buckingham and his wife, answered, and they set up that the personal property of the firm was ample to pay the mortgages, and that it should be applied thereto. Subsequently to the decree, there was credited on the execution the sum of $24,349.18, the price of certain personal property of the late firm of James Horner & Co., bought by Ludlum for Corning, under the permission given him to bid and buy, as aforesaid. Corning purchased the mortgaged premises July 5th, 1877, for the balance due on his decree. The bill further alleges that Corning's said mortgages were usurious, and that the foreclosure decree was for $20,000 more than the sum actually due thereon; that the sale of the personal property to Corning through Ludlum, the receiver, was illegal and for a very inadequate price—at least $30,000 less than its fair value; that, before the foreclosure sale, the lease which the late firm had to flow certain land for the water-power by which the factory machinery was run, with the right to buy the same at a stated price, had expired, and that, although Ludlum, as receiver, had abundant means to purchase the said land or renew the lease for the benefit of the trust estate, he communicated the fact of the expiration of the lease to the solicitor of Corning, in the foreclosure suits, and said solicitor thereupon, before the foreclosure sale, acting for the benefit of Ludlum and Corning, obtained a renewal of the said lease, in the name of Ludlum's

wife, who has ever since held the same for the benefit of Ludlum and Corning; that said Ludlum was present at said foreclosure sale, and openly proclaimed that the old lease of said water-right had expired; that his wife had taken a new lease, and that she would hold it adversely to any purchaser.

It is further set forth in the bill that, after the sale of the personal property to Corning, the Pompton Steel and Iron Com pany was organized under a special charter, in the interest and for the benefit of Corning and Ludlum, who are the stockholders and directors therein, and have absolute control thereof; that the personal property purchased by Corning through Ludlum, as aforesaid, was transferred to this company, and that an agreement has existed, ever since the sale, between Corning and Ludlum, that when the mortgages shall be fully satisfied, Ludlum shall resume control of the property. James Ludlum was removed from the office of receiver on the 22d of June, 1879, and Kirkpatrick, the complainant, appointed receiver in his stead. This bill is filed by Kirkpatrick, as receiver of the late firm of James Horner & Co., against Erastus Corning, James Ludlum and Susan H., his wife, Alice Buckingham, as executrix and devisee under the will of James Horner, deceased, and John M. Buckingham, her husband, Susan Horner and the Pompton Steel and Iron Company. The prayer of the bill is that the complainant may be allowed to redeem the property sold under the foreclosure decree, on the payment of the sum actually due on the mortgages, deducting the fair value of the use and occupation of the premises since the foreclosure sale, and also crediting the full value of the personal property bought by Corning through the former receiver, and if redemption be denied on these terms, that the foreclosure sale be set aside and a new sale ordered, to raise what may be due after making such credits as the complainant shall be equitably entitled to.

To this bill, the defendants Corning, Ludlum and wife, and the Pompton Steel and Iron Company, have demurred; the material allegations of the complainant's bill must, therefore, be taken as true.

The first ground relied upon by the complainant is that Lud-

lum, as receiver, was not made a defendant to the foreclosure proceedings.

Ludlum was appointed receiver under a bill filed by Alice Buckingham, executrix of James Horner, deceased, to secure a settlement of the partnership affairs of James Horner & Co., on behalf of Horner's devisees. No title whatever to the real estate was vested in Ludlum as receiver. The bill shows that, before the institution of the foreclosure suit, all the debts of the firm were paid except a claim of one McElroy (the amount of which is not stated), for services, which claim is in litigation. It also appears that there was personal property of the firm to the amount of $120,000, applicable to the payment of debts, besides $37,000 worth of personalty divided been Ludlum and Mrs. Buckingham.

Ludlum was appointed receiver, on behalf of the devisees of Horner, and while he was charged with the duty of paying the firm debts, there were abundant assets for that purpose, outside of the real estate, the legal title to which was in the individual members of the firm.

The only persons beneficially interested as defendants in the foreclosure suit were Ludlum and the devisees of Horner.

These devisees were all made parties, and Ludlum, the then receiver, was also a party, in his individual capacity. Admitting that the latter should have been a party, as receiver, he and the parties whom he represented could not stand by without objecting, and claim to be heard in equity, against the proceeding and decree. after sale of the property. The decree would obviously have been without effect, unless it was to bar the right of the receiver. The devisees and Ludlum had the entire interest, both legal and equitable, and that interest was represented by the receiver. The receiver would not have been permitted to exercise any rights in the property, against their wishes. If they had sold and conveyed the property, the purchaser would have taken the entire title, with the right to apply to the court to discharge all equitable power of the receiver over it. Their silence in the suit was equivalent to a consent that the property should be treated as their property, and it would be inequitable,

Kirkpatrick *v.* Corning.

now, to allow them to object. Manifestly, this suit is, in fact, prosecuted in behalf of Horner's devisees, and in their interest alone. The view of the chancellor, in respect to this part of the case, is right.

It will be necessary, therefore, to consider the other branch of the complainant's case, which rests upon the allegations of fraud contained in the bill.

The charge is expressly made that, before the foreclosure sale, the renewal of the Schuyler lease was secured in the name of Ludlum's wife, by Corning's solicitor, for the benefit of Ludlum and Corning, and that Ludlum proclaimed, at the sale, that the lease would be held adversely to any purchaser. The inevitable effect of such a scheme was to deter purchasers from bidding, and Corning was thereby enabled to purchase the premises without competition. The attitude in which these defendants are thus placed is simply this : Ludlum, false to his duty as receiver, deters bidders at the sale, and Corning tempts him to a breach of trust by sharing with him the fruits of the fraud on the *cestuis que trust.* If the complainants can successfully establish the truth of these charges, they will be entitled not only to redeem the mortgaged premises, but also, if the bill is properly framed for that purpose, to a transfer of the Schuyler lease, on equitable terms.

This furnishes sufficient ground for retaining the bill. The other allegations of fraud need not be adverted to. The extent of the relief to which the complainants may be entitled must be determined on final hearing. The decree below should be reversed.

*Decree unanimously reversed.*